**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

WCI, INC., an Ohio Corporation, d/b/a        **CASE NO.:**
"Cheeks,"

      v.

JOHN BORN, in his official capacity as
Director, THE OHIO DEPARTMENT OF
PUBLIC SAFETY, and DEBORAH PRYCE,
in her official capacity as Chairman, THE
OHIO LIQUOR CONTROL COMMISSION
_____/

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELEIF**

WCI. INC., an Ohio Corporation d/b/a "Cheeks," by and through the undersigned Counsel,

hereby file this Complaint for Declaratory and Injunctive Relief against THE OHIO

DEPARTMENT OF PUBLIC SAFTEY, by and through JOHN BORN, in his official capacity as

Director, THE OHIO DEPARTMENT OF PUBLIC SAFETY, and THE OHIO LIQUOR

CONTROL COMMISSION, by and through DEBORAH PRYCE, in her official capacity as

Chairman, THE OHIO LIQUOR CONTROL COMMISSION, and would state as follows:

**INTRODUCTORY STATEMENT AND NATURE OF THE ACTION**

The Ohio Liquor Control Commission, in dealing with the administration of alleged

violations of the state liquor laws allegedly committed within the confines of "Gentlemen's

Clubs," has a custom and practice of imposing enormous and disproportionate fines, or, in the

alternative, calling for the revocation of an applicable permit holder's liquor permit, thus reflecting

a discriminatory animus which is content based, violates an affected permit holder's constitutional

rights to due process and equal protection under law, and manifests a violation of the permit

holder's First Amendment rights. These customs and practices, and the procedures related thereto,

1

manifest the exercise of unbridled administrative discretion and manifest a violation of the Eighth Amendment to the United States Constitution because of the excessive nature of the penalties imposed.

## PARTIES AND JURISDICTION

1.     Plaintiff, WCI, INC., an Ohio Corporation, d/b/a "Cheeks," ("WCI") is a "Gentlemen's Club," and a permit holder of an Ohio Liquor License, located at 906 Watertower Lane, West Carrollton, Ohio 45449**.**

2.     THE OHIO DEPARTMENT OF PUBLIC SAFTEY is named herein, by and through JOHN BORN, in his official capacity as Director of THE OHIO DEPARTMENT OF PUBLIC SAFETY, (the "DEPARTMENT") which is charged with the responsibility of enforcing the liquor laws of the state of Ohio.

3.     THE OHIO LIQUOR CONTROL COMMISSION is named herein, by and through DEBORAH PRYCE, in her official capacity as Chairman of THE OHIO LIQUOR CONTROL COMMISSION, (the "LCC") which is charged with the responsibility of promulgating rules regarding liquor producing sales and other matters related to the manufacture, distribution and sale of beer, wine and liquor, as well as the administration of purported violations of the liquor laws of the State of Ohio.

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, this being a civil action arising under the Constitution and the laws of the United States.

5.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1343(a)(3) and (4), 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988, this being an action for declaratory judgment and equitable relief authorized by law to redress deprivations under color of law of rights, privileges and immunities secured by the Constitution of the United States.

2

6.     At all times pertinent to this Complaint,, and in taking all of the actions described in this Complaint, Defendants, their officers, agents and employees, acted and threaten to act under color of law and were effecting, and will effect, the custom, policy and laws of the state of Ohio.

## GENERAL ALLEGATIONS AND FACTS GIVING RISE TO PLAINTIFF'S COMPLAINT

### A.  PLAINTIFF'S STATEMENT OF POSITION

7.     Plaintiff WCI's business is engaged in the presentation of First Amendment protected exotic dance performances which contain as an integral component of their communicative characteristics an emphasis on human sexuality. The performances which take place within Plaintiff's business are non-obscene.

8.     The location of the Plaintiff WCI's business is in an area of generic commercial uses which are fronted on widely traveled roadways.

9.     Plaintiff's business has been established and has been the subject of significant investment and development sums for the specific purpose of being a bar and restaurant which provides exotic dancing entertainment.

10.     Plaintiff's performers are independent professionals that present expressive dance presentations to patrons desirous of receiving the messages conveyed by the performers.

11.      The operation of the Plaintiff's business, as the forum for the presentation of performers' dance presentations does not cause any secondary effects within the community in which it is located. The business does not cause a decrease in property values, an increase in criminal activity, or the acceleration of urban blight.

12.     Plaintiff's business is in compliance with all relevant state and local governmental regulations and is safe for public occupancy as a place of public assembly.

13.     At all times material hereto, the Plaintiff's business and performance success was

3

and is predicated on public appeal in the expressive dance performances performed by the independent professional artists represented by the performers. These artists receive compensation in the form of gratuities from patrons pleased with the expressive performances.

14. The Plaintiff believes that the presentation of expressive dance performances is a beneficial social activity which creates joy and entertainment for the beholder. The Plaintiff considers the appreciation of the human body, an integral component of the exotic dance performances described herein, which exhibit the socially accepted and/or popular contemporary characteristics or concepts of physical ability and attractiveness, presented to be both entertaining and a socially enriching experience for both performers and patrons.

15. The Plaintiff wishes to continue to communicate the above beliefs through the medium of dance by the presentation of the professional exotic dance performances described herein. The Plaintiffs do not intend the performances to be, nor are the performances, obscene.

## B. FACTUAL AND PROCEDURAL BACKGROUND

16. This action involves the administration of actions wherein WCI, as a liquor permit holder, was charged with violations of 4301: 1-1-52 ("Regulation 52"), the regulations of the Liquor Control Commission dealing with "entertainment," and imposing prohibitions against "improper conduct."

17. This original investigation was predicated on a "routine field investigation" by the Investigative Unit of the Department, which took place on March 8, 2014, in WCI's business, "Cheeks," a Gentlemen's Club. This investigation resulted in a 3 Count Violation Notice and a hearing on same.

18. On August 5, 2015, during the hearing on the alleged violations against WCI, WCI entered a "plea" of "denial w/stipulation" as to violation Number 2 ("improper conduct-nudity").

4

19.     The Commission, upon the Motion of Counsel for the Attorney General's Office, dismissed violation Number 1 ("improper conduct-solicitation for anything of value") and Number 3 (improper conduct-sexual activity).

20.     During the hearing, the Appellant asserted a reservation of rights under *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 421-22, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), reserving all rights applicable thereto, and thereafter participated in the hearing, which did not include any evidentiary presentation, with the sole evidence supporting the charge being the reports contained in the Ohio Department of Public Safety Investigative Unit Incident /Arrest Report. The Report recites the conduct which allegedly occurred between an Agent Bowers and Ms. Clark.

21.     For the purposes of this action, the nature of the violations involve alleged violations of Ohio Admin. Code 4301.1-52(B)(2)("improper display of nudity") and Ohio Admin. Code 4301.1-52(B)(3)("allowing persons to engage in sexual activity"). The Notice of Hearing for these matters is attached hereto and incorporated herein as Exhibit "A."

22.      Critically, there was no statement in the report that anyone in management for WCI was informed of any of the conduct allegedly occurring between the Agent and Ms. Clark, and no record of any complaint or knowledge that Ms. Clark had any "predisposition" to engage in any offending activity, or that management had any knowledge or gave any consent to the alleged activity.

23.     During the hearing, a substantial amount of information was placed on the record showing the extensive policies and procedures utilized by WCI to implement the greatest level of surveillance and supervision to avoid any such problematic conduct.

5

24.     Included in these materials was a copy of the Entertainer Lease Application, which included extensive documentation showing that any performer desiring to perform at the WCI facility, had: 1) not been convicted for felony possession or sale of drugs, 2) not been convicted of prostitution or solicitation, 3) not been terminated from any other establishment for drugs or promoting prostitution, and 4) an acknowledgment that any false information under "application" would result in immediate cancellation of the performers access to the WCI premises, as well as other important informational components.

25.     In addition to this important legal document, it was also shown that WCI even went to the extent of providing written notices on the mirrors of the dressing room to ensure that appropriate "coverage" was utilized by all performers to avoid any violations of Regulation 52.

26.     Also provided was documentation reflecting training programs and standards provided to "All Managers and Monitors," to ensure compliance with all regulatory aspects of the operation of the permitted establishment, and specifically identified "zero tolerance" for prostitution, drugs, solicitation, improper touching, and a number of other related conduct issues.

27.     Also included were documents reflecting the "Due Diligence Audit," in which various individuals, without being identified and entering the club anonymously, would monitor the premises to verify compliance with all regulatory aspects of the permitted establishment.

28.     Finally, copies of posters and placards were provided which described, specifically, "Rule 52 Dress Standards," the "Due Diligence Program," and notices regarding Human Trafficking and its detection and avoidance.

29.     In addition to these internal operational documents, the Docket Entry for Jessica Clark was provided, showing that her charges had been amended to that of "disorderly conduct," which is apparently not a specific regulatory violation of Regulation 52.

6

30.     The hearing on the WCI violations went forward on August 5, 2015, went forward at which point in time the Asst. Attorney General went through the charges and status of the case, followed by Counsel for WCI then presenting the above described facts in mitigation, and thereafter answering questions posed by the Commission.

31.     The Commission took the matter under advisement, and, on August 20, 2015, the Commission issued its order, finding the Permit Holder/Appellant to be in violation of Count Number 2, as specified above. Ax copy of this Order is attached hereto and incorporated herein as Exhibit "B."

32.     Thereafter, WCI filed a Motion for Rehearing or Reconsideration and the Attorney General filed their Memorandum in Opposition to WCI's Inc.'s Motion for Reconsideration, also on September 9, 2015.

33.     An Order denying WCI's Motion for Rehearing or Reconsideration was issued September 10, 2015, requiring the payment of the $25,000 fine, or effecting the revocation of the subject liquor permit, that same day. A copy of the Order denying the Motion for Rehearing or Reconsideration is attached hereto and incorporated herein as Exhibit "C."

34.     On that same day, WCI, as the Permit Holder/Appellant filed its Notice of Appeal to the Court of Common Pleas, Franklin County, Ohio Division.

35.     In the briefing submitted to the Court of Common Pleas, WCI asserted a reservation of rights under *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 421-22, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), reserving all rights applicable thereto, and challenged, for the purposes relevant to this Federal action, the sanction of $25,000 or revocation of the liquor permit as being disproportionate and unconstitutional under the Ohio State Constitution.

7

36.     On January 5, 2016, the Court of Common Pleas issued a Decision and Entry on the Merits of a Revised Code 119.12 Administrative Appeal Affirming the State Liquor Control Commission's Order of September 10, 2015. A copy of this Decision is attached hereto and incorporated herein as Exhibit "D."

37.     In this Decision, it was stated that, "This Court, pursuant to *Henry's Café, Inc., v. Of. Liquor Control,* 170 Ohio St. 233, cannot modify the sanction." (See Exhibit "D," p. 5).

38.     Thereafter, WCI timely filed an Appeal form the Court of Common Pleas decision (Exhibit "D") in the Court of Appeals of Ohio, Tenth Appellate District.

39.     In the briefing submitted to the Tenth Appellate District, WCI asserted a reservation of rights under *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 421-22, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), reserving all rights applicable thereto, and challenged, for the purposes relevant to this Federal action, the sanction of $25,000 or revocation of the liquor permit as being disproportionate and unconstitutional under the Ohio State Constitution.

40.     On July 5, 2016, the Court of Appeals of Ohio, Tenth Appellate District, issued its Decision, affirming the Court of Common Pleas. A copy of this Decision is attached hereto and incorporated herein as Exhibit "E." The relevant portions of that Decision state:

> "First, it is well-settled that a liquor permit does not create a property right subject to the traditional due process. *WCI, Inc. v. Ohio Liquor Control Comm.,* 116 Ohio St.3d 547, 2008-Ohio-88, Par. 24, citing *State ex rel. Zugravu v. O'Brien,* 130 Ohio St. 23, 27 (1935) (The holdings are uniformly to the effect that such a license does not create a property right within the constitutional meaning of that term, nor even a contract, and that it constitutes a mere permission to engage in a liquor business, which may be revoked in the prescribed legislative manner).

> "Second, a liquor permit holder maybe sanction through the suspension or revocation of its liquor permit for the violation of any restriction of R.C. Chapter 4301 and 4303, or any lawful rule of the Commission, or for other sufficient cause. See *Elhanise, Inc. v. Ohio Liquor Comm.*, 10th Dist. No. 13AP-937, 2014-Ohio-2243, Par. 11."

8

See Exhibit "E," p. 5.

41. The Decision also contains a Dissent, wherein it is stated, and subsequently expanded on:

"…a liquor permit has, in fact, been found to be a property interest issued by the U.S. Sixth Circuit Court of Appeals since 1991, in *Brookpark Entertainment, Inc. v. Taft*, 951 F.2d 710, 716 (6th Cir. 1991)."

See Exhibit "E," p.8-12, Brunner, J, concurring in part and dissenting.

42. Subsequent to the Decision of the Court of Appeals of Ohio, Tenth Appellate District, WCI sought to have the Supreme Court of Ohio accept jurisdiction of the issues raised in the previously described actions, however, On February 22, 2017, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). A copy of this Order Entry is attached hereto and incorporated herein as Exhibit "F."

## C. THE CHARACTERISITCS OF THE CHALLENGED LEGISLATION AND THE CUSTOMS AND PRACTICES OF THE LIQUOR CONTROL COMMISSION

43. A permit holder may be sanctioned through the suspension or revocation of its liquor permit for the violation of any restriction of R.C. Chapter 4301, 4303, or any other lawful rule of the Commission or for other sufficient cause. R.C. 4301.25(A).

44. While there are a variety of different options and limitations for sanctions imposed on a permit holder, such as R.C. 4301.252, "Option of paying forfeiture rather than suspending operations," and other various sections of the applicable regulations, there is no limitation on the amount of monetary sanctions, or any specific criteria that establishes any guidelines for a monetary sanction and/or suspension and/or revocation of a liquor permit.

45. The liquor control commission may revoke or cancel any permit on its own initiative or on complaint of the division of liquor control or of any person, after a hearing at which

9

the holder shall be given an opportunity to be heard in such manner and upon such notice as prescribed by the rules of the commission. R.C. 4301.27.

46. To be specific, this action involves the scope of administrative punishment allowable under the enforcement of 4301:1-1-52 ("Rule 52"), a regulation applicable to alcoholic beverage facilities.

47. Rule 52 imposes a variety of restrictions on the exposure of "specified anatomical areas" can be in a location dealing in alcoholic beverages.

48. Rule 52 consists of two parts, a definitional section and a section that sets forth substantive violations.

49. Specifically, 4301:1-1-52, Rule 52, states as follows:

"Entertainment - prohibition against improper" conduct.

(A) Definitions as used is this rule:

(1) "Disorderly activities" are those that harass, threaten or physically harm another person including threats or other menacing behavior, fighting, assaults and brawls or any violation as defined by section 2917.11 of the Revised Code.

(2) "Nudity" means the showing of the human male or female genital, pubic area or buttocks with less than a fully opaque covering; the showing of the female breast with less than a fully opaque covering of any part of the nipple and/or areola; the exposure of any device, costume, or covering which gives the appearance of or simulates the genitals, pubic hair, natal cleft, perineum anal region or pubic hair region; or the exposure of any device worn as a cover over the nipples and/or areola of the female breast, which device

10

simulates and gives the realistic appearance of the nipples and/or areola.

(B) Prohibited activities; no permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:

(1) Engage in any disorderly activities;

(2) Appear in a state of nudity;

(3) Engage in sexual activity as said term is defined in Chapter 2907 of the Revised Code;

(4) Commit public indecency, as said term is defined in Chapter 2907 of the Revised Code.

50.    The operative definitions of Chapter 2907, are as follows:

As used in sections 2907.01 to 2907.38 of the Revised Code:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

(C) "Sexual activity" means sexual conduct or sexual contact, or both.

11

…

(H) "Nudity" means the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state.

R.C. 2907.01

51. The "common public indecency" component of Rule 52 is found in 2907.09.

"Public indecency":

(A) No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:

(1) Expose the person's private parts;

(2) Engage in sexual conduct or masturbation;

(3) Engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation.

(B) No person shall knowingly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront another person who is a minor, who is not the spouse of the offender, and who resides in the person's household:

(1) Engage in masturbation;

(2) Engage in sexual conduct;

(3) Engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation;

(4) Expose the person's private parts with the purpose of personal sexual arousal or gratification or to lure the minor into sexual activity.

52. The operative penalties for alleged violations of Chapter 2907, are as follows:

12

(C)

(1) Whoever violates this section is guilty of public indecency and shall be punished as provided in divisions (C)(2), (3), (4), and (5) of this section.

(2) Except as otherwise provided in division (C)(2) of this section, a violation of division (A)(1) of this section is a misdemeanor of the fourth degree. If the offender previously has been convicted of or pleaded guilty to one violation of this section, a violation of division (A)(1) of this section is a misdemeanor of the third degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a misdemeanor of the second degree. If the offender previously has been convicted of or pleaded guilty to two violations of this section, a violation of division (A)(1) of this section is a misdemeanor of the second degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to three or more violations of this section, a violation of division (A)(1) of this section is a misdemeanor of the first degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a felony of the fifth degree.

(3) Except as otherwise provided in division (C)(3) of this section, a violation of division (A)(2) or (3) of this section is a misdemeanor of the third degree. If the offender previously has been convicted of or pleaded guilty to one violation of this section, a violation of division (A)(2) or (3) of this section is a misdemeanor of the second degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to two or more violations of this section, a violation of division (A)(2) or (3) of this section is a misdemeanor of the first degree or, if any person who was likely to view and be affronted by the offender's conduct was a minor, a felony of the fifth degree.

(4) Except as otherwise provided in division (C)(4) of this section, a violation of division (B)(1), (2), or (3) of this section is a misdemeanor of the second degree. If the offender previously has been convicted of or pleaded guilty to one violation of this section, a violation of division (B)(1), (2), or (3) of this section is a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty to two or more violations of this section, a violation of division (B)(1), (2), or (3) of this section is a felony of the fifth degree.

(5) Except as otherwise provided in division (C)(5) of this section, a violation of division (B)(4) of this section is a misdemeanor of the first degree. If the offender previously has been convicted of or pleaded guilty

13

to any violation of this section, a violation of division (B)(4) of this section is a felony of the fifth degree.

R.C. 2907.09

53. Unlike the provisions of Chapter 2907 for "common public indecency," and the guidelines applicable to the offenses described therein, the penalties for any alleged violation of Rule 52 under R.C. 4301 have no comparative guidelines or limitations.

54. This action does not challenge the *restrictions* imposed by Rule 52, but the apparently "content based" and disproportionately harsh punishments imposed by the Liquor Control Commission for "exposure," or other conduct inherent in the operation of a "Gentlemen's Club."

55. It is the custom and practice of the Liquor Control Commission to consistently impose extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs."

56. The conduct of the Liquor Control Commission, in imposing the sanctions on WCI described above ($25,000 or revocation), is an example of the Commission's custom and practice of consistently imposing extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs."

### D. <u>PLAINTIFF'S STATEMENT OF JURISDICTIONAL ALLEGATIONS ESTABLISHING STANDING, RIPENESS, AND A RIGHT TO RELIEF</u>

57. The continued threatened enforcement of Rule 52 by and through the Defendants enforcement efforts and customs and practices described above, directly impairs and chills the First Amendment protected activities manifested by Plaintiffs business and the expressive

14

activities of the Plaintiff's performers.

58.     Plaintiff has a clear legal right to the use and operation of the subject business and the presentation of the above described performances without interference by the Defendants, their agents, servants or employees.  Such lawful use may be terminated only after Plaintiffs have been afforded due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution and Plaintiff has been denied due process of law by the threatened unbridled ability of the Commission to impose *any* sanction, without guidelines or limitation, on a First Amendment protected form of expression.

59.     Plaintiff asserts that its position, as set forth in this Complaint, is legally sound and supported by fact and law.  The Defendants' actions, however, have created a bona fide controversy between the parties, and Plaintiff is in doubt as to its rights, privileges and immunities with respect to the customs and practices of the Defendants herein.

60.     Plaintiff requires, therefore, a declaratory judgment declaring its rights, privileges and immunities. Further, Plaintiff seeks to enjoin the continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52.

61.      There is a clear, present, actual, substantial and bona fide justifiable controversy between the parties.

62.     Plaintiff is and will be threatened with continued unbridled sanctions for matters brought before the Commission for alleged violations of Rule 52. Alternatively, Plaintiff will be required to terminate or to substantially alter the form and content of the First Amendment protected exotic dance performances they have chosen to present at the current location, thus limiting the Plaintiff's freedom of expression, destroying the business goodwill developed by the

Plaintiff, and causing the Plaintiff severe financial hardship, as well as other forms of irreparable harm.

63.     Plaintiff has no adequate remedy at law.  No amount of money damages could adequately compensate the Plaintiff for the irreparable harm described herein.

64. Plaintiff and its agents, employees, entertainers, patrons, and the public at large will suffer irreparable injury if injunctive relief is not granted, and Defendants are permitted to continue to continue to exercise unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52.

65.     The loss of rights guaranteed by the First Amendment is so serious that, as a matter of law, irreparable injury is presumed and in such an instance involving the loss of First Amendment rights, damages are both inadequate and unascertainable.

66.     The public interest would best be served by the granting of injunctive relief, and the public interest is disserved by permitting the continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52, which interferes with the Plaintiff's and the public's rights under the First Amendment to the United States Constitution.

67.     All conditions precedent to the institution and maintenance of this cause of action have occurred or have been performed, and all available administrative and judicial remedies, subject to the reservation of rights under *England v. Louisiana Board of Medical Examiners*, 375 U.S. 411, 421-22, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), have been exhausted.

68.     The acts, practices and jurisdiction of Defendants, as set forth herein, were and are being performed under color of state law and therefore constitute state action within the meaning of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

16

## COUNT I

69.     The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, in that it abridges and restrains the Plaintiff's rights to free expression, in violation of the First Amendment.

## COUNT II

70.     The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiffs by the United States Constitution, on its face and as applied, in that it denies equal protection of the law and allows for arbitrary, oppressive, and discriminatorily based sanctions, which unreasonably requires the Plaintiff to submit to controls not imposed on other commercial permit holders.

## COUNT III

71.     The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, in that it acts in a way arbitrary and capricious as applied to Plaintiff.

## COUNT IV

72.     The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, in that it constitutes an unlawful and unauthorized taking of private property without

just compensation, without due process of law, and without a valid public purpose, in violation of the Fifth Amendment of the United States Constitution.

## COUNT V

73. The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiffs by the United States Constitution, on its face and as applied, in that it lacks adequate procedural safeguards.

## COUNT VI

74. The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, in that it manifests an improper purpose and evinces a discriminatory animus in that the exercise if the above described customs and practices is not content-neutral and is not unrelated to the suppression of free speech.

## COUNT VII

75. The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, in that it grants unbridled discretion to the administrative officials in the enforcement of the provisions of the legislation applicable to liquor permit holders.

## COUNT VIII

76. The continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations

of Rule 52 violates the rights guaranteed Plaintiff by the United States Constitution, on its face and as applied, in that it in that the penalties imposed by Defendants are grossly disproportionate and allows the imposition of an excessive fine, in violation of the Eighth Amendment.

**ENTITLEMENT TO ATTORNEY'S FEE PURSUANT TO 42 U.S.C. SECTION 1988**

77.     In the legitimate desire to pursue the rights and privileges guaranteed by the Constitution and laws of the United States, the Plaintiff has employed the undersigned counsel to prosecute this action and has agreed to pay a reasonable fee for same, which fees and costs should be awarded to Plaintiff pursuant to 42 U.S.C. § 1988.

**DEMAND FOR JURY TRIAL**

78.     The Plaintiff herein would demand a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court GRANT the following relief:

a)     Declaring the continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52 to be violative of the aforementioned federal constitutional and statutory provisions.

b)     Set and hold a hearing, and temporarily and permanently enjoin Defendants from the continued exercise of unbridled discretion in the imposition of penalties on "Gentlemen's Clubs," including Plaintiff, brought before the Commission for alleged violations of Rule 52.

c)     Awarding any and all attorney's fees and costs as authorized by law;

d)     Awarding any and all actual, consequential and special damages caused by Defendants' conduct as described herein;

19

e)      Such other and further relief as this Court deems fit, just, and equitable.

Dated: <u>August 19, 2017</u>                      Respectfully submitted,


                                        /s/ Anthony R. Cicero
                                        ANTHONY R. CICERO (0065408)
                                        CiceroAdams, LLC
                                        500 East Fifth Street
                                        Dayton, Ohio 45402
                                        Tel. (937) 424-5390
                                        Fax (937) 424-5393
                                        Email: tonycicero@gocicero.com

                                        And

                                        /s/ Luke Lirot
                                        LUKE LIROT (*Subject to Admission Pro Hac Vice*)
                                        Florida Bar Number 714836
                                        LUKE CHARLES LIROT, P.A.
                                        2240 Belleair Road, Suite 190
                                        Clearwater, Florida 33764
                                        Telephone: (727) 536-2100
                                        Facsimile: (727) 536-2110
                                        luke2@lirotlaw.com  (primary e-mail)
                                        jimmy@lirotlaw.com  (secondary e-mail)
                                        justin@lirotlaw.com (secondary e-mail)