# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| WCI, INC., | : | Case No. 3:17-cv-000282 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| OHIO DEPARTMENT OF PUBLIC | : | |
| SAFETY, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Ohio Administrative Code § 4301:1-1-52(B)(2)-(4), known as Rule 52, "prohibits holders of Ohio liquor licenses from engaging in or allowing employees or agents of the holder to engage in certain activities, including '[a]ppear[ing] in a state of nudity ….'" *WCI, Inc. v. Ohio Department of Public Safety*, 774 F. App'x 959, 962 (6th Cir. 2019).

Plaintiff WCI, Inc. does business as a "Gentlemen's Club" (more colloquially, a strip club, *see id.* at 960) in Ohio.  WCI holds an Ohio liquor license.  In August 2015, Defendant Ohio Liquor Control Commission (the Commission) concluded that WCI violated Rule 52's nudity prohibition and issued an order revoking its liquor license.[2] The Commission gave WCI the alternative option to pay a $25,000 fine to avoid losing

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2]For more on the particulars of the violation, see Doc. #9 and *WCI, Inc. v. Ohio Department of Public Safety*, 774 F. App'x 959, 960-61 (6th Cir. 2019).

its liquor license.

WCI asked the Commission to reconsider its order, but the Commission declined. WCI then sought relief at each level of the Ohio court system—the Franklin County Court of Common Pleas, the Ohio Court of Appeals, and the Ohio Supreme Court. After WCI did not succeed in the Ohio courts, it filed the instant case raising a variety of federal constitutional claims.

This case is presently before the Court following a remand from the U.S. Court of Appeals for the Sixth Circuit. WCI's remaining claims arise under the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's Excessive Fines Clause.

Defendants argue that dismissal for lack of jurisdiction is warranted under Fed. R. Civ. P. 12(b)(1) because the Eleventh Amendment blocks WCI's remaining claims. Defendants also seek judgment on the pleadings under Fed. R. Civ. P. 12(c) for numerous reasons—including, the *Rooker-Feldman* doctrine, absence of a live case or controversy, failure to state a claim upon which relief could be granted, and res judicata and collateral estoppel.

WCI contends that Rule 12(c) is the improper procedural tool to invoke at this point in the case—particularly after remand from the Sixth Circuit—and that discovery rather than dismissal is warranted. WCI also argues that its Complaint advances plausible claims and that Defendants' other dismissal arguments lack merit.

## II. Plaintiff's Complaint and Remaining Claims

WCI alleges that the Commission has a custom and practice in its enforcement of Rule 52:

55.    It is the custom and practice of the Liquor Control Commission to consistently impose extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs."

56.    The conduct of the Liquor Control Commission, in imposing the sanctions on WCI described above ($25,000 or revocation), is an example of the Commission's custom and practice of consistently imposing extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters before the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs."

(Doc. #1, *PageID* #14).

WCI's remaining due-process claims arise in Counts III, IV, V, and VII of its Complaint.  Each Count begins, "The continued exercise of unbridled discretion in the imposition of penalties on 'Gentlemen's clubs,' including [WCI], brought before the Commission for alleged violations of Rule 52 violates the rights guaranteed by the United States Constitution …."  (Doc. #1, *PageID* #s 17-18).  These Counts then allege, respectively, that the Commission's enforcement of Rule 52 is arbitrary and capricious as applied to WCI (Count III), constitutes an unconstitutional taking (Count IV), lacks adequate procedural safeguards (Count V), and "grants unbridled discretion to administrative officials in the enforcement of provisions of the legislation applicable to liquor permit holders [Count VII]."  *Id*.

WCI's other remaining claim (Count VIII) rests on the theory that Rule 52's grant of "unbridled discretion" to the Commission results in penalties that are "grossly disproportionate and allows the imposition of an excessive fine, in violation of the Eighth Amendment."  (Doc. #1, *PageID* #s 18-19).

WCI's Complaint requests relief (in part) in the form of a declaration that the

Commission's continued exercise of unbridled discretion in imposing penalties for alleged violations of Rule 52 violates the Constitution; attorney fees and costs; and any and all actual, consequential, and special damages.  *Id*. at 19.

## III.  Rules 12(b)(1) and 12(c)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits dismissal of a Complaint for lack of subject matter jurisdiction.  When the Eleventh Amendment applies, the Court lacks subject matter jurisdiction over the claims it bars.  *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) ("the Eleventh Amendment is a true jurisdictional bar, Defendants' entitlement to sovereign immunity must be decided before the merits.").

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).  "'[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment' as a matter of law."  *Id.* (quoting, in part, *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007)).

"The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible.  However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient."  *Id.*

(quoting, in part, *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); citing *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009)).

Defendants previously filed a Rule 12(b)(6) Motion, which the Court granted, leading to appeal and remand. (Doc. #9). WCI seeks to stop Defendants from invoking Rule 12(c) for what they see as a second time. It argues that the law of the case doctrine prevents Defendants from rehashing the same arguments they raised in their earlier-filed Rule 12(b)(6) Motion. This contention lacks merit because the law of the case doctrine applies to the issue the Court of Appeals actually decided, not to arguments left unresolved. *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) ("For a prior decision to control [under the doctrine of law of the case], the prior tribunal must have actually decided the issue."). The Sixth Circuit did not actually resolve Defendants' arguments for dismissal of WCI's remaining constitutional claims pursuant to the Eleventh Amendment, the *Rooker-Feldman* doctrine, the absence of a live case or controversy, failure to state a claim upon which relief could be granted, and claim preclusion or issue preclusion. The Sixth Circuit also left open WCI's assertion in its Complaint that it had preserved its right to federal judicial review of its constitutional claims pursuant to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964). *See WCI*, 774 F. App'x at 961.

WCI argues that Rule 12(c) consideration is not proper and, instead, discovery is presently warranted:

> The Sixth Circuit Appeals correctly stated that issues related to due
> process protections concerning the imposition of penalties and
> whether those penalties are excessive need to be briefed in greater

> detail.  By obvious implication, this means after discovery in the
> litigation.  The appellate court's remand is not conducive to
> dismissal or judgment on the pleadings under Rule 12.  If these
> questions were determinable by such motions, the Sixth Circuit
> would not have remanded these issues for additional consideration.

(Doc. #23, *PageID* #177).  This reads too much into the Court of Appeals' decision.

Nothing in the Sixth Circuit's decision speaks directly to the need for discovery before, or precludes, consideration of issues remaining under Rule 12.  The remand decision does not impliedly suggest the need for discovery following remand.  Instead, the Sixth Circuit declined to reach certain due-process issues and the merits of WCI's Eighth-Amendment claim because these matters were not adequately briefed, and this Court had not yet addressed them.  *WCI*, 774 F. App'x at 966-67.  Doing so, it invoked the "'general rule that a federal appellate court does not consider an issue not passed upon below.'"  *Id*. (citations omitted).

Viewed broadly, Defendants' Rule 12(c) Motion contends, for various reasons, that Plaintiff's remaining constitutional claims fail as a matter of law.  With a single exception, no discovery is needed to resolve these issues, and nothing in the Court of Appeals' decision prevents this Court from resolving the parties' Rule 12(b)(1) and (c) before discovery occurs.

## IV.    Eleventh Amendment

Defendants maintain that the Eleventh Amendment extends immunity to them from Plaintiff's attempt to recover monetary damages against them in their official capacities.  This is partially correct.

"The judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...."  U.S. Const. amend. XI.  When the Eleventh Amendment applies in federal lawsuits, it bars monetary claims against a State or state officials acting in their official capacities.  *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (and cases cited therein).  "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' i.e., against the State." *Id.* (quoting, in part, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989)).

The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.  *See, e.g., Johns v. Supreme Court of Ohio,* 753 F.2d 524, 527 (6th Cir. 1985).  WCI does not contend otherwise.  WCI's claims are therefore barred to the extent it seeks monetary damages against state officials in their official capacities.  *Id.*; *see Allen v. Ohio Dept. of Job and Family Servs.*, 697 F.Supp.2d 854, 908 (S.D. Ohio 2010) (Smith, D.J.) ("The Sixth Circuit has repeatedly and consistently held that the State of Ohio has not consented to be sued for state law claims in federal court.").

At the outset of this case, WCI sued John Born, Director of the Ohio Department of Safety and Deborah Price, Chair of the Commission.  Born's successor in office is Thomas Stickrath.  To the extent WCI seeks monetary damages against Stickrath and Price in their official capacities, the Eleventh Amendment blocks WCI's claims.  To the extent WCI seeks monetary relief from the Ohio Department of Safety and the Commission arising from enforcement of Rule 52 against WCI for its past conduct, the

7

Eleventh Amendment blocks WCI's claims.

Defendants also contend that WCI's request for declaratory and injunctive relief is truly prospective, and relief should not be granted for WCI's allegations of speculative future injury.

WCI contends that the Eleventh Amendment does not bar their claim against state officials for prospective injunctive relief. This is correct. "*Ex Parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations, 'regardless of whether compliance might have an ancillary effect on the state treasury.'" *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citation omitted). Absent state consent, the Eleventh Amendment bars suits against state agencies or departments. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see Elman v. Wright State University*, 3:18cv358, 2019 WL 4624328, at *2 (S.D. Ohio 2019) (Rice, DJ).

But the Eleventh Amendment does not bar a Complaint advancing "'an ongoing violation of federal law and seek[ing] relief properly characterized as prospective.'" *Boler*, 865 F.3d at 412 (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (other citation omitted). This is because "the federal courts must also ensure that state officers meet their obligations under federal law." *Price v. Medicaid Director*, 838 F.3d 739, 746 (6th Cir. 2016).

WCI's Complaint sufficiently alleges ongoing constitutional violations by the Commission. First, it alleges, "It is the custom and practice of the Liquor Control Commission to consistently impose extraordinarily high financial sanctions, in lieu of a

threat of revocation, on virtually all matters brought before the Commissioner that involve alleged violations of Rule 52, involving 'Gentlemen's Clubs.'"  (Doc. #1, *PageID* #14, ¶55).  Second, the Complaint continues, "The conduct of the Liquor Control Commission, in imposing sanctions on WCI described above ($25,000 or revocation), is an example of the Commission's custom and practice of consistently imposing extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before the Commission that involve alleged violations of Rule 52, involving 'Gentlemen's clubs.'"  *Id.* at ¶56.  Third, WCI bases its claimed violations of procedural due process and the Eighth Amendment on "[t]he continued exercise of unbridled discretion in the imposition of penalties on 'Gentlemen's Clubs,' including [WCI], brought before the Commission for alleged violations of Rule 52 …."  *Id.* at *PageID* #s 17-19.  Fourth, WCI seeks prospective declaratory and injunctive relief.  It seeks prospective relief that declares Defendants' continued exercise of unbridled discretion in its imposition of penalties for Rule 52 violations upon Gentlemen's Clubs is contrary to the Due Process Clause and the Eighth Amendment.  WCI additionally seeks prospective injunctive relief enjoining Defendants from such conduct.

The Eleventh Amendment does not bar WCI's claims and requests for declaratory and injunctive relief because its Complaint "alleges … ongoing violation[s] of federal law and seeks relief properly characterized as prospective."  *Boler*, 865 F.3d at 412 (citation and internal punctuation omitted).  "It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Kanuszewski v. Michigan Dep't of HHS*, 927 F.3d 396, 417 (6th Cir. 2019); *cf. Russell v.*

*Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015) ("Enjoining a statewide official under *Young*[3] based on his obligation to enforce a law is appropriate when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." (footnote added)).

Defendants argue that there is no current or pending Rule 52 violation against WCI and therefore the Eleventh Amendment does not apply. This, however, overlooks the WCI's allegations concerning the Commission's ongoing custom and practice of Rule 52 enforcement in an unconstitutional manner.

In sum, the Eleventh Amendment bars WCI's Complaint to the extent WCI seeks monetary relief from Defendants Stickrath and Price in their official capacity and from the Commission and the Ohio Department of Public Safety. The Eleventh Amendment does not preclude WCI's due-process and Eighth-Amendment claims based on Defendants' allegedly continuing custom and practice of exercising unbridled description in the imposition of extraordinarily high financial penalties in lieu of license revocation on WCI and Gentlemen's Clubs for alleged violations of Rule 52 infringes.

## V.  *Rooker-Feldman* Doctrine

Defendants contend that the *Rooker-Feldman* doctrine bars WCI's claims regarding its past $25,000 fine because WCI fully and unsuccessfully litigated these claims in state court.

---

[3] *Ex parte Young,* 209 U.S. 123 (1908).

"The *Rooker-Feldman*[4] doctrine bars lower federal courts from conducting appellate review of final state-court judgments because 28 U.S.C. § 1257 vests sole jurisdiction to review such claims in the Supreme Court." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (footnote added).  Yet, *Rooker-Feldman* occupies "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). "The doctrine … does not bar federal jurisdiction 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'  Instead, the doctrine applies only where a state-court loser initiates an action in federal district court, complaining of injury caused by a state court judgment, and seeks review and rejection of that judgment." *Berry*, 688 F.3d at 298-99 (quoting, in part, *Exxon*, 544 U.S. at 293).

WCI lost in the Ohio courts.  The significant *Rooker-Feldman* issue is whether the source of WCI's injury is the state-court judgment itself.  *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).  If so, WCI is essentially attacking the state-court judgment and, as a result, *Rooker-Feldman* bars this Court from reviewing its claims. *See id.*  "If there is some other source of injury, such as a third party's actions…," *Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008) (quoting *McCormick*, 451 F.3d at 394), then WCI asserts an independent claim over which this Court may exercise federal-question jurisdiction.

WCI contends that the source of its injury "is not a state court judgment but the improper application of fines by state agencies in violation of federal protections."  (Doc.

---

[4] *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

#23, *PageID* #181).  WCI explains, that it is "not challenging the constitutionality of Rule 52 itself, but instead the egregious application of the fine structure imposed for violations of Rule 52."  *Id*. at 181-82.

Defendants contend that the true source of the injury is the $25,000/revocation sanction because this case does not occur without it.

The injury WCI seeks to heal relates to the Commission's imposition of the $25,000 fine in lieu of liquor-license revocation.  But, as indicated above, WCI's Complaint does not focus on this injury; it instead refers to the Commission's imposition of the $25,000 fine in lieu of revocation as an example of the Commission's alleged custom and practice that results in unconstitutional enforcement of Rule 52.  *Supra*, §II.

WCI's due-process and Eighth-Amendment claims do not seek to appeal a decision or judgment by the Ohio courts about whether the Commission has a custom and practice that results in its unconstitutional enforcement of Rule 52 against WCI and Gentlemen's Clubs.  Defendants do not point to a decision by the Ohio courts resolving this particular issue.  Additionally, construing the Complaint in WCI's favor, each of WCI's remaining claims are framed around the allegation challenging the Commission's "continued exercise of unbridled discretion …" in imposing extraordinarily high financial penalties on Gentlemen's Clubs for Rule 52 violations.  Here, again, it is not a state-court decision or judgment that is at issue but the allegedly ongoing unconstitutional conduct by the Commission's exercise of its purported custom and practice that matters.  And WCI's requested remedies seek to stop the threat of this allegedly unconstitutional conduct by way of declaratory and injunctive relief.  This threat—not a previous state-

court decision—is the source of WCI's injury. *Cf. Berry*, 688 F.3d at 302 ("Our present review, without more, shows that the 'source of the injury' is the threat of future enforcement, and not the prior state court decision.").

In addition, although in the Court of Common Pleas, WCI challenged the constitutionality of Rule 52 on its face and as applied, the resulting decision did not mention or resolve the Commission's alleged custom and practice of unconstitutional enforcement of Rule 52. *See id.* at 27-28. Likewise, the Ohio Court of Appeals did not discuss whether the Commission had a custom or practice of enforcing Rule 52 in violation of due process or the Eighth Amendment.

Accordingly, the *Rooker-Feldman* doctrine does not apply because WCI's asserted injury arises from the Commission's alleged custom and practice of enforcing Rule 52 against WCI and Gentlemen's Clubs in violation of due process and the Eighth Amendment rather than from a state-court judgment.

## VI.    Res Judicata and Collateral Estoppel

Defendants contend that res judicata (claim preclusion) and collateral estoppel (issue preclusion) bar WCI's remaining claims because it could have litigated them during the proceedings in the Ohio courts. Defendants further contend that WCI actually litigated its Eighth-Amendment claim during the proceedings in the Ohio courts, thus triggering claim and issue preclusion.

"Under Ohio law, '[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.'" *Quality Associates, Inc. v. The*

13

*Procter & Gamble Distributing LLC*, 949 F.3d 283, 289 (6th Cir. 2020) (quoting, in part,

*Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015) (other citation omitted)).

> "Claim preclusion prevents subsequent actions, by the same parties
> or their privies, based upon any claim arising out of a transaction
> that was the subject matter of a previous action." The doctrine also
> bars any subsequent action whose claims "could have been litigated
> in the previous suit." "Issue preclusion, on the other hand, serves to
> prevent relitigation of any fact or point that was determined by a
> court of competent jurisdiction in a previous action between the
> same parties or their privies," and "applies even if the causes of
> action differ."

*Anderson*, 798 F.3d at 350 (quoting *O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St.3d

59, 862 N.E.2d 803, 806 (2007)).

> Claim preclusion under Ohio law has four elements:
>
> (1) a prior final, valid decision on the merits by a court of competent
> jurisdiction; (2) a second action involving the same parties, or their privies,
> as the first; (3) a second action raising claims that were or could have been
> litigated in the first action; and (4) a second action arising out of the
> transaction or occurrence that was the subject matter of the previous action.

*Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011) (citation

omitted).

These elements are satisfied in the present case. First, the Ohio Court of Appeals'

issued a valid final decision on the merits of WCI's appeal of the Commission's Order.

Second, the present case involves the same parties, WCI and the Commission, or their

privies, that litigated WCI's appeal in the Ohio Court of Appeals.

Third, as explained above, *supra*, §§ II, V, WCI claims in this case that the

Commission has an ongoing custom and practice of exercising unbridled discretion and

imposing extraordinarily high fines on WCI and Gentlemen's Clubs for Rule 52

14

violations. This, WCI claims, infringes their rights to procedural due process and to be free from excessive protected by the Eighth Amendment. Review of the Ohio courts' decisions does not reveal the presence of this custom-and-practice claim. Yet, there is no doubt that WCI could have litigated these constitutional claims in the Ohio courts during its challenge to the Commission's imposition of a $25,000 fine in lieu of revocation.

Fourth, the transaction or occurrence that WCI identifies in this case is the WCI's ongoing use of a custom and practice that results in unconstitutional enforcement of Rule 52. WCI's challenge to the Commission's Order in the Ohio courts involved an occurrence of this alleged unconstitutional Order. As a result, the present case arises from the same occurrence that was the subject matter of its appeal in the Ohio courts.

WCI argues that it could not have obtained the remedy it now seeks—declaratory and injunctive relief—during its appeal of the Commission's Order in the Ohio courts. This argument lacks merit. Under Ohio law, res judicata "'applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action.'" *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000) (quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 383 (1995) (other citation omitted)).

WCI fares somewhat better with its reliance on *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411 (1964). WCI contends that claim and issue preclusion do not bar its present claims because it reserved federal judicial review of them pursuant to *England*.

In the present case, on WCI's earlier appeal, the Sixth Circuit noted that the *England* reservation "question might warrant further analysis on remand." *WCI*, 774 F. App's at 961 (citations omitted). So it does.

"In *England…*, the Supreme Court provided a means whereby a federal court plaintiff could preserve his right to litigate federal issues in federal court even though he had been required by *Pullman* abstention first to present his state issues to the state courts." *Wicker v. Board of Educ. of Knott County, Ky.*, 826 F.2d 442, 443 (6th Cir. 1987) (citing *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)). "*Pullman* abstention requires a plaintiff to proceed to state court on those issues whose resolution may make unnecessary further action in federal court." *Id.* at 445.

The Supreme Court ultimately held:

> [I]f a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then—whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court.

*Id.* at 419.

A party is not required to litigate its federal challenges to a state statute in state court before proceeding in federal district court. *Id.* at 420. "If [a party] freely and without reservation presents her constitutional concerns to the state court, litigates them there, and has them decided there, then she will forego her right to return to federal court; her only relief will be from the Ohio appellate courts and in review by the United States Supreme Court on certiorari." *Gottfried v. Medical Planning Services, Inc*., 142 F.3d 326, 333 (6th Cir. 1998) (citing *England,* 375 U.S. at 419).

16

How then does a party in state court reserve its right to litigate its federal challenges to a state statute under *England*?  It must notify the state court of its federal claims, inform the state court that it "is exposing [its] federal claims there only for the purpose…" of complying with *England* (or its predecessor *Windsor*[5]) and that it "intends, should the state courts hold against [it] on the question of state law, to return to the District Court for disposition of [its] federal contentions." *England*, 375 U.S. at 421; *see Gottfried*, 142 F.3d at 333.  "[T]he litigant is in no event to be denied [its] right to return to the District Court unless it clearly appears that [it] voluntarily did more than ... required and fully litigated his federal claims in the state courts.  When the reservation has been made, however, his right to return will in all events be preserved." *England*, 375 U.S. at 421 (footnote omitted).

In its Complaint, WCI states that its briefing in the Court of Common Pleas and the Ohio Court of Appeals contained a reservation of rights under *England*, "reserving all rights applicable thereto, and challenged, for the purposes relevant to this Federal action, the sanction of $25,000 or revocation of the liquor permit as being disproportionate and unconstitutional under the Ohio State Constitution."  (Doc. #1, *PageID* #s7-8, ¶s 35, 39).  And it asked (without success) the Ohio Supreme Court to accept jurisdiction of the issues raised in the previous state-court proceedings. *Id*., *PageID* #9, ¶42.

Whether WCI effectively reserved its rights pursuant to *England* is a mixed question of fact and law.  The pertinent facts would be the precise language WCI used in

---

[5]*Government & Civic Employees Organizing Comm., CIO v. Windsor,* 353 U.S. 364 (1957).

17

the state courts to reserve its rights pursuant to *England*. The briefs WCI filed in state

court would provide this information, but they are not presently in the record of this case.

Construing the allegations of WCI's Complaint in its favor, it does not "clearly appear[,]"

at the moment, that WCI "voluntarily did more than ... required and fully litigated his

federal claims in the state courts." *England*, 375 U.S. at 421.

Defendants contend that WCI litigated and lost on the merits its Eighth

Amendment claim in the Ohio Court of Appeals. The Sixth Circuit addressed this

situation in *Wicker*:

> Determining what was brought in state court may be difficult: "the
> determination of which issues or claims were brought before the
> state court may on occasion necessitate subtle inquiries. In such
> cases, the principles of *England* would bid us focus attention on the
> intent of the party raising claims in state court." *New Jersey Educ.
> Ass'n v. Burke,* 579 F.2d 764, 774 n. 52 (3d Cir.1978). Here, we
> accept Wicker's conduct in the state proceedings as the most reliable
> indication of his intent.

*Wicker*, 826 F.2d at 446.

Constructing WCI's allegations in its favor, it attempted to reserve in the Ohio

courts its remaining federal constitution claims under *England*. Its attempt, for present

purposes, raises the reasonable possibility that it intended to reserve its federal

constitutional claims under *England*. The fact that the Ohio Court of Appeals found

WCI's Eighth-Amendment claim to lack merit is not presently dispositive of the

*England*-reservation issue. "[E]vidence that a party has been compelled by the state

courts to litigate his federal claims there will of course preclude a finding that he has

voluntarily done so." *England*, 375 U.S. at 436, n.12.

18

Accordingly, res judicata applies to WCI's remaining constitutional claims due to its previous litigation in state court, but it does not clearly appear, at the moment, that WCI voluntarily and fully litigated its remaining federal constitutional claims in the Ohio courts. WCI may therefore continue to litigate its due-process and Eighth-Amendment claims.

## VII. The Commission's "Unbridled Discretion"

Defendants contend that WCI's Counts III, IV, V, VII, and VIII of the Complaint fail to raise plausible claims for violations of the Due Process Clause and the Eighth Amendment. They reason that WCI's reference to Defendants' exercise of "unbridled discretion" when enforcing Rule 52 adopts nothing more than a label "rather than a fair statement of liability supported by well-pleaded allegations …." (Doc. #22, *PageID* #166). Defendants also characterize WCI's allegation of "unbridled discretion" as conclusory and unadorned. And Defendants argue that the Complaint raises the question about the particular standards by which the "unbridled discretion" is adjudged against and from where the standard is derived. *Id.* at 165.

A reasonable reading of WCI's Complaint reveals that the phrase "unbridled discretion" means the Commission can impose any monetary sanction it wants without limitation and without later judicial review when imposing a penalty for Rule 52 violations on WCI or other Gentlemen's Clubs. The Complaint is not conclusory and unadorned. It identifies the Commission's allegedly ongoing custom and practice that results in the imposition of penalties upon WCI and Gentlemen's Clubs without procedural due process and in violation of the Eighth Amendment. Under WCI's theories

19

of liability, moreover, it seeks to measure the Commission's alleged custom and practice and use of unbridled discretion against the procedural requirements of the Due Process Clause and the Excessive Fines Clause of the Eighth Amendment.

Accordingly, Defendants' contentions regarding WCI's use of the phrase "unbridled discretion" in its Complaint lack merit.

## VIII.  Takings Claim

Defendants contend that WCI's claim (Count IV) under the Takings Clause of the Fifth Amendment fails to state a legally cognizable claim because deprivations of its property interest in its liquor license "lie as claims for lack of procedural due process, rather than as a 'Takings' claim."  (Doc. #22, *PageID* #169 (citations omitted)). Defendants rely upon the Taking-claim analysis in *L.A. Globe v. City of Lansing*, no. 5:01cv54, 2003 U.S. Dist. LEXIS 2040 (W.D. Mich. 2003).

Although *L.A. Globe* is not controlling authority in this Court, its Takings-claim analysis is persuasive.  The plaintiff in *L.A. Globe* did not plead, argue, or acknowledge either category of taking—physical or regulatory taking—in support of their claim.  *Id*. at *23.  The plaintiff instead characterized it claim as one for "procedural due process."  *Id*. The same is true of WCI's Complaint.  *See* Doc. #1, *PageID #17-18*, ¶72.  The district court in *L.A. Globe* also explained that the plaintiff offered nothing to support the existence of such a claim, and the district court could not discern a basis for such a claim. 2003 U.S. Dist. LEXIS 2040, *23.   The same is true in the instant case.  And, the district observed in *L.A. Globe*, "If, as the Court suspects, plaintiff is really alleging that defendant's due process violation deprived it of or diminished the value of its liquor

20

license, then its claim would properly lie under the Due Process Clause, not the Takings

Clause." 2003 U.S. Dist. LEXIS 2040, *23. This same is true in the instant case.

Accordingly, WCI fails to raise a plausible Takings claim in Count IV of its

Complaint.

## IX.    Eighth Amendment

Defendants maintain that WCI has failed to sufficiently plead a claim for relief

under the Eighth Amendment's Excessive Fines Clause. Defendants reason, "the fact

that an Eighth Amendment 'excessive fines' violation requires a showing of

disproportionality suggests that there must be some allegation indicating the standard by

which the lack of proportion between the gravity of the offense and the seriousness of the

alleged sanction is measured. No such allegation remotely exists in WCI's Complaint."

(Doc. #22, *PageID* #171).

The Eighth Amendment provides, in part, "Excessive bail shall not be required,

nor excessive fines imposed …." *See WCI*, 774 F. App'x at 967 (citing *Hudson v. United

States*, 522 U.S. 93, 103 (1997)). The Eighth Amendment applies to the states by its

incorporation into the Fourteenth Amendment. *Timbs v. Indiana*, __U.S.__, 139 S.Ct.

682, 687 (2019); *see WCI*, 774 F. App'x at 967. And "the fine levied against WCI was

punitive in nature and that the Eighth Amendment applies." *WCI*, 774 F. App'x at 967.

The Sixth Circuit, moreover, remanded the case "as to the question of whether the

Commission's fines were excessive in violation of the Eighth Amendment …." *Id*.

A fine is excessive in violation of the Eighth Amendment when it is "'grossly

disproportional to the gravity of a defendant's offense.'" *Fields v. Henry County, Tenn.*,

701 F.3d 180, 184 (6th Cir. 2012) (quoting, in part, *United States v. Bajakajian,* 524 U.S. 321, 334 (1998)).

WCI bases its Eighth Amendment claim on the Commission's "continued exercise of unbridled discretion in the imposition of penalties on 'Gentlemen's Clubs,' including [WCI] brought before the Commission for alleged violations of Rule 52 …." (Doc. #1, *PageID* #s 18-19, ¶76). WCI asserts that the penalties the Commission imposes "are grossly disproportionate and allows the imposition of an excessive fine, in violation of the Eighth Amendment." *Id*.

As stated above, *supra*, §VII, a reasonable reading of WCI's Complaint reveals that the phrase "unbridled discretion" means the Commission can impose any amount of monetary penalty it wants without limitation for Rule 52 violations. The Complaint explains, "This action does not challenge the **restrictions** imposed by Rule 52, but the apparently 'content based' and disproportionately harsh punishments imposed by the … Commission for 'exposure,' or other contact inherent in the operation of a Gentlemen's Club." (Doc. #1, *PageID* #14, ¶54 (emphasis in original)). The Complaint alleges, "It is the custom and practice of the … Commission to consistently impose extraordinarily high financial sanctions, in lieu of the threat of revocation, on virtually all matters brought before the Commission that involve alleged violations of Rule 52, involving "Gentlemen's Clubs.'" *Id*. at ¶55. And the Complaint identifies an example of such a penalty in the Commission's decision to impose a $25,000 fine in lieu of revocation on WCI for a single violation of Rule 52. *Id*. at ¶56.

Accepting these allegations as true, the Complaint plausibly alleges that the

Commission has a custom and practice of imposing extraordinarily high fines on WCI and Gentlemen's Clubs and that those extraordinarily high fines are grossly disproportionate to Rule 52 violations in violation of the Eighth Amendment.

Helpful comparative examples in *Fields* where the plaintiff argued that the use of a bond schedule to set his bail violated his Eighth Amendment right to be free from excessive bail. *Id*. at 183. Finding no Eighth Amendment violation in the use of a bond schedule, the Sixth Circuit continued, "That is not to say that using a bond schedule can never violate the Excessive Bail Clause. If, for example, the bond schedule set bail for domestic assault at an amount 'grossly disproportional to the gravity of' that offense, then using the schedule could violate the Eighth Amendment." *Id*. at 184 (quoting, in part, *Bajakajian,* 524 U.S. at 334). The Sixth Circuit then shed light on some of the possible considerations:

> [The plaintiff] does not claim it was excessive either relative to the crime he was charged with or based on the particular facts of his case. *See, e.g., Wagenmann v. Adams,* 829 F.2d 196, 213 (1st Cir. 1987) (finding $500 excessive when defendant had no criminal history and was accused of minor violations); *cf. United States v. Beaman,* 631 F.2d 85, 86–87 (6th Cir. 1980) (finding $400,000 bond excessive under the statutory counterpart to the Eighth Amendment based on the "facts available in this case"). He does not argue that the evidence produced at his hearing was too weak to justify the amount. *See, e.g., United States v. Leisure,* 710 F.2d 422, 428 (8th Cir. 1983) (finding bail of $1 million and $2 million cash for defendants was excessive when "all of the evidence adduced before the magistrate indicated that appellants would appear at their trial"). And he does not claim that his bail was much higher than normal for such charges or that the judge relied upon impermissible factors. *See, e.g., Stack,* 342 U.S. at 5, 72 S.Ct. 1 ("It is not denied that bail for each petitioner has been fixed in a sum much higher than that usually imposed for offenses with like penalties and yet there has been no factual showing to justify such action in this case.");

> *Wagenmann,* 829 F.2d at 213 (holding that attempting "to guarantee continued confinement" was an impermissible purpose).

*Id.* at 184-85.

Returning to the present case, the Complaint alleges that the criminal charges underlying the Rule 52 violation were reduced to a charge of disorderly conduct, "which is apparently not a specific regulatory violation of [Rule] 52. (Doc. #1, *PageID* #6, ¶29; *see* ¶s 49-52). The most serious disorderly conduct offense under Ohio law is a fourth-degree misdemeanor. Ohio Rev. Code § 2917.11(E)(3). The current maximum penalties for such an offense is a $250 fine and 30 days in jail. Ohio Rev. Code § 2929.24(A)(4), § 2929.29(A)(2)(iv). Although the original underlying criminal charges may have been more serious, the present record does not identify those charges. If this $250 fine—or for that matter, the maximum fine ($1,000) for a first-degree misdemeanor is considered— the Commission's $25,000 fine on WCI would be grossly disproportionate to the misdemeanor offense. If the underlying criminal offense were a fifth- or fourth-degree felony (applicable to, for example, pandering obscenity, Ohio Rev. Code § 2907.32(C)), the maximum fine would be $5,000 or $4,000, respectively. The Commission's $25,000 fine would again be at least potentially grossly disproportionate to the underlying charge.[6] And, it appears, as WCI alleges, that there is no maximum fine the Commission can impose under Ohio Rev. Code § 4301.252 for Rule 52 violations. For these reasons, it remains plausible that the Commission imposes extraordinarily high fines on WCI and

---

[6]Interestingly, the Commission cannot impose a fine, but must revoke a liquor license, when the Commission finds reliable, probative, and substantial evidence to show a felony was committed on the license-holder's premises. *See* Ohio Rev. Code §4301.252(D).

Gentlemen's Clubs that are grossly disproportionate to Rule 52 violations and to at least some of the possible criminal offenses underlying Rule 52 violations.

Accordingly, WCI's advances sufficiently specific facts to state a plausible Eighth Amendment claim.

## X.     Procedural Due Process

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted).

During the earlier appeal in this case, the Sixth Circuit remanded WCI's procedural due process claim for further proceedings. *WCI*, 774 F. App'x at 965. Discussing and quoting, in part, *Mathews,* the Sixth Circuit explained:

> In determining whether there has been adequate procedure, the Supreme Court has given us three factors to examine:
>
>> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. (quoting, in part, *Mathews*, 424 U.S. at 335).

Examining the first factor, the Sixth Circuit found that WCI's private interest in its liquor license is clear:  Its "business will be severely curtailed, possibly even ruined if it loses its liquor license."  *Id*.  A remand was needed, however, on the remaining two factors:

> On remand, the district court is instructed that WCI has a property interest in its Ohio liquor license.  This district court must consider, under the framework of *Mathews*, whether Ohio provided sufficient procedural protection to satisfy the requirements of due process.

*Id.*

Defendants contend that they are entitled to judgment on the pleadings because Chapter 119 of the Ohio Revised Code provided WCI with sufficient procedural safeguards to satisfy the Due Process Clause.  Defendants view WCI's allegations as confirming that the Ohio Court of Common Pleas followed the procedures provided in Ohio Rev. Code §119.12 and that WCI took further advantage of the judicial-review process by appealing to the Ohio Court of Appeals and the Ohio Supreme Court.

What process did WCI receive in Ohio?  Upon its appeal of the Commission's Order imposing a $25,000 fine in lieu of WCI's liquor-license revocation, the Common Pleas Court recognized, "By stipulating to the facts contained in the investigator's report, [WCI] admitted to the [Rule 52] violation."  (Doc. #1, *PageID* #28).  The Common Pleas Court then explained that WCI had "presented evidence of the efforts it took to avoid these types of violation in an apparent effort to secure some leniency.  In the end, the Commission issued a lawful sanction."  *Id*.  The Common Pleas Court further concluded, "The Commission's Order is supported by reliable, probative and substantial evidence and is in accordance with law."  *Id*.  This legality stopped the Common Pleas Court from modifying the Commission's sanction pursuant to *Henry's Café, Inc. v. Bd. Of Liquor Control*, 170 Ohio St. 233 (1959).  *Id*.

A brief pause here is warranted to emphasize the stonewall *Henry's Café* has built:

26

> The Supreme Court of Ohio has held a court of common pleas "has no authority to modify a penalty that [an] agency was authorized to and did impose, on the ground that the agency abused its discretion." *Henry's Café, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), paragraph three of the syllabus.  Pursuant to this precedent, we have consistently held that we lack authority to modify a penalty lawfully imposed by the commission, even where it is argued that the penalty is unduly harsh.  *See, e.g., Abdel Latif, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 06AP-1078, 2007-Ohio-2943, ¶ 14; *Goldfinger Ents., Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 01AP-1172, 2002-Ohio-2770, ¶ 13-17.

*Deanru, LLC v. Ohio Liquor Control Comm'n*, 2018-Ohio-2854, ¶12, 2018 WL 3482327, at *3 (Ohio App. 10 Dist. 2018).  At times, the Ohio Court of Appeals has lamented this situation:

> Having properly found the commission's order was supported by reliable, probative and substantial evidence, the common pleas court had no authority to modify the penalty lawfully imposed by the commission.
>
> * * *
>
> As a practical matter, courts have no power to review penalties meted out by the commission.  Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh.

*HDV Cleveland, LLC v. Ohio Liquor Control Comm'n*, 101 N.E.3d 1025, 1039 (Ohio App. 10 Dist. 2017) (quoting *Lindner v. Liquor Control Comm.*, 00AP–1430, 2001 WL 579808 (Ohio App. 10 Dist. 2001)).

Returning to the process WCI received, the Ohio Court of Appeals found, in part, "There is reliable, probative and substantial evidence to support both the violation and the punishment and … the Commission's Order was in accordance with the law." *Id.* at 34. The Ohio Court of Appeal also rejected WCI's contention that the $25,000 fine was

excessive in violation of the Eighth Amendment.  It reasoned, "[I]n light of WCI's previous violations, including a forfeiture of $10,000 ordered less than one year before the Commission's decision in this case, we cannot characterize the $25,000 forfeiture as excessive."[7]  *Id.* at 38.  The Court of Appeals made no mention of *Henry's Café*.

Defendants contend that the Sixth Circuit has repeatedly explained how Ohio Rev. Code Chapter 119 satisfies procedural due process.  They cite two cases in support of this argument: *Comsia v. Mangnone*, No. 85-4060, 1987 WL 35877 (6th Cir. 1987); *Haddix v. Simon*, 84-3951, 1986 WL 16826 (6th Cir. 1986).

Neither *Comsia* nor *Haddix* mandates the due-process conclusion Defendants advocate.  Unpublished decisions by the Sixth Circuit Court of Appeals "do not constitute binding precedent.  However, they may constitute persuasive authority 'especially where there are no published decisions which will serve as well ….'"  *Hood v. Keller*, 229 F. App'x 393, 398 n.5 (6th Cir. 2007) (citations omitted); *see United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007).

*Comsia* found that the plaintiff had failed to state a violation of procedural due process because the State of Ohio, through Ohio Rev. Code § 119.12, provides an adequate post-deprivation proceeding.  1987 WL 35877, *1.  *Haddix* found that Ohio has provided adequate pre- and post-deprivation remedies for those adversely affected by the Commission's decisions.  1986 WL 16826, *1.  Neither *Comsia* nor *Haddix* is persuasive due to the complete lack of meaningful analysis in both cases to support their procedural

---

[7]The Court of Common Pleas noted that WCI had a history of two similar Rule 52 violations, most recently in September 2013.  (Doc. #28, *PageID* #25).

due-process conclusions.

Defendants also rely on *Planet Earth Entertainment, Inc. v. Edwards*, 84

F.Supp.2d 891 (S.D. Ohio 1999) in which District Judge Walter H. Rice denied a motion

for temporary restraining order in part because the plaintiff had failed to demonstrate a

substantial likelihood of success on the merits of its due-process challenge to Ohio Rev.

Code §119.12:

> With respect to Ohio Rev. Code § 119.12, Ohio courts have
> interpreted the statute as permitting *some* judicial review of the
> sanctions imposed by the Liquor Control Commission [LCC].
> Specifically, LCC sanctions may be reviewed by a common pleas
> court to ensure that they fall within the range authorized by law.
> *See, e.g., Henry's Cafe, Inc. v. Board of Liquor Control,* 170 Ohio
> St. 233, 163 N.E.2d 678 (1959).

*Planet Earth*, 84 F.Supp.2d at 897 (emphasis in original).  This is surely correct.  The

references to "*some* judicial review" and "within the range authorized by law" points to

the Ohio courts' review of "whether the order of the commission was supported by

reliable, probative, and substantial evidence."  *Planet Earth Entertainment, Inc. v. Ohio*

*Liquor Control Comm.*, 125 Ohio App.3d 619, 622 (Ohio App. 10 Dist. 1998) (citation

omitted).

Judge Rice also observed:

> Beyond that limited review, however, sanctions imposed by the LCC are
> not subject to any judicial scrutiny.  In other words, Ohio courts will not
> review the severity of a sanction, if that sanction is authorized by law.
> Diamonds cites no authority, however, establishing that due process
> requires anything more.

*Id*. at 897.

Defendants' reliance on *Planet Earth* is misplaced because the plaintiff in *Planet*

29

*Earth* argued "that Ohio's statutory scheme for liquor license revocations, and for administrative appeals from such sanctions, violates substantive and procedural due process." 84 F. Supp.2d at 894. WCI advances a different theory of due-process liability by claiming that the Commission has a custom and practice of imposing extraordinarily high fines for Rule 52 violations by Gentlemen's Clubs, including WCI.

At best for Defendants, *Planet Earth* "question[ed] whether § 119.12 is unconstitutional merely because it disallows challenges to the severity of administrative penalties that fall within an authorized range." 84 F.Supp.2d at 898. *Planet Earth* did not hold that § 119.12 provides sufficient procedures to satisfy due process. And *Planet Earth* did not dismiss the procedural due-process claim as constitutionally meritless. *See id.* ("regardless of the merits of Diamonds' constitutional challenge, res judicata appears to preclude an attack on the constitutionality of § 119.12 in this case.").

*Planet Earth*, moreover, did not specifically address the due-process inquiry required by the Sixth Circuit in its decision remanding this case for further proceedings— namely, "the risk of an erroneous deprivation of…" WCI's liquor license "through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *WCI*, 774 F. App'x at 966 (quoting *Mathews*, 424 U.S. at 335). *Planet Earth*, moreover, acknowledged, "The U.S. Supreme Court has recognized that '[t]he extent to which legislatures may commit to an administrative body the unreviewable authority to make determinations implicating fundamental rights is a difficult question of constitutional law.'" 84 F.Supp.2d at 897 (quoting, in part, *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill,* 472 U.S. 445, 450 (1985)).

Because Defendants' procedural due-process arguments go no further than relying on *Planet Earth*, *Comsia*, and *Haddix*, and because these cases are not binding precedent and do not directly address the procedural due-process factors that must be addressed in this case on remand from the Sixth Circuit, Defendants' arguments fail to demonstrate they are entitled to judgment on the pleadings on WCI's procedural due-process claims.

## IS THEREFORE RECOMMENDED THAT:

1.  Defendants' Motion to Dismiss (Doc. #22) under Rule 12(b)(1) be GRANTED, in part, and WCI's claims for monetary damages be dismissed under Fed. R. 12(b)(1) as barred by the Eleventh Amendment; Defendants' Motion to Dismiss (Doc. #22) under Rule 12(b)(1) be otherwise DENIED.

2.  Defendants' Motion for Judgment on the Pleadings (Doc. #22) under Rule 12(c) be GRANTED, in part, and Plaintiff's Takings claim in Count IV of the Complaint be dismissed; Defendants' Motion for Judgment on the Pleadings (Doc. #22) under Rule 12(c) be otherwise DENIED.


April 27, 2020                                 *s/Sharon L. Ovington*
                                               Sharon L. Ovington
                                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).